Charles Dwight **MESSER,**
Petitioner–Appellee,
Cross–Appellant,

v.

**STATE OF FLORIDA,**
Respondent–Appellant,
Cross–Appellee.

No. 85–3124.

United States Court of Appeals,
Eleventh Circuit.

Nov. 30, 1987.
Rehearings Denied Jan. 5, 1988.

Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellant/cross appellee.

Louie Dugas, Orange, Tex., W. Gregory Miller, Cornelius & Collins, Nashville, Tenn., for petitioner-appellee/cross appellant.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Charles Messer was convicted of first degree murder and robbery in December 1974. The jury returned an advisory sentence of death and in January 1975 the trial judge imposed a sentence of death by electrocution. The facts underlying Messer's convictions and sentence are contained in the opinion of the Florida Supreme Court, *Messer v. State*, 330 So.2d 137 (Fla.1976), which affirmed his conviction for first degree murder and robbery, but vacated the sentence and remanded the case to the trial court for a new sentencing hearing. The

second jury returned an advisory sentence of death in May 1976, and in June 1976 the trial judge again imposed a sentence of death by electrocution. Messer appealed. After a series of proceedings regarding possible due process violations pointed out in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), *see Messer v. State*, 384 So.2d 644 (Fla.1980), the Florida Supreme Court affirmed the sentence of death. *Messer v. State*, 403 So.2d 341 (Fla.1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982). In 1983, Messer filed a motion for post-conviction relief under the Florida Rules of Criminal Procedure. A Florida circuit court denied relief and the Florida Supreme Court affirmed. *Messer v. State*, 439 So.2d 875 (Fla.1983). The Florida Supreme Court also denied Messer's petition for a writ of habeas corpus. *Id.* at 877–78.

Messer filed the instant petition for writ of habeas corpus in federal district court on October 13, 1983. On January 2, 1985, the district court granted the writ of habeas corpus and ordered a new sentencing hearing on the ground that the state trial court judge had violated *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) by refusing to consider nonstatutory mitigating evidence when imposing the death sentence. The state appeals, and we now affirm the district court on this claim. The district court concluded that a procedural default barred Messer's *Lockett* claim to the effect that the jury was instructed not to consider nonstatutory mitigating circumstances. Messer cross-appeals with respect to this claim. Since the district court's decision, the Florida Supreme Court has made it clear that Florida courts will no longer apply the procedural default rule to bar such a *Lockett* claim. For this reason, and because Messer's *Lockett* claim that the jury was limited to statutory mitigating evidence has merit, we reverse the district court to this extent. The district court denied relief as to the other challenges advanced by Messer. Messer also cross-appeals as to these other claims on which relief was not granted. We affirm as to these other claims.

The issues we consider on appeal are: (1) the *Lockett* claims, i.e., whether in 1976 the jury was instructed not to consider, and whether the judge failed to consider, nonstatutory mitigating evidence, and whether *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars consideration of this issue; (2) whether Messer received effective assistance of counsel at the guilt/innocence phase of his 1974 trial; and (3) whether persons who expressed reservations about the death penalty were improperly excluded from the 1974 jury.

## I. LIMITATION ON JUDGE'S AND JURY'S CONSIDERATION OF NONSTATUTORY MITIGATING CIRCUMSTANCES

■ It is well established that a sentencing body must not be limited in its consideration of mitigating circumstances. *Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Eddings v. Oklahoma*, 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973 (1978); *Songer v. Wainwright*, 769 F.2d 1488, 1489 (11th Cir.1985) (en banc). This principle applies both to the Florida sentencing jury and the sentencing judge. *Riley v. Wainwright*, 517 So.2d 656 (Fla. 1987); *see also Magill v. Dugger*, 824 F.2d 879 (11th Cir.1987).

■ The state argues that Messer's *Lockett* claims (both with respect to the judge and jury) are barred by a state procedural default and the rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, recent decisions of the Florida Supreme Court make it clear that Florida courts will no longer apply the procedural default rule to bar a *Lockett* claim such as the instant one. In *Thompson v. Dugger*, 515 So.2d 173 (Fla. 1987), the Florida Supreme Court held: "We find that the United States Supreme Court's consideration of Florida's capital sentencing statute in its *Hitchcock* opinion represents a sufficient change in the law that potentially affects a class of petitioners, including Thompson, to defeat the claim

of a procedural default." *See also Riley v. Wainwright, supra.* When the state court has declined to rely upon a procedural default, *Campbell v. Wainwright,* 738 F.2d 1573 (11th Cir.1984), *cert. denied* 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986), or when its procedural default rule has been only sporadically invoked, *Spencer v. Kemp,* 781 F.2d 1458 (11th Cir.1986) (en banc), the procedural default no longer bars consideration of the issue in federal court. In light of the recent decisions of the Florida Supreme Court, we reject the state's argument that Messer's *Lockett* claims are procedurally barred, and turn to a consideration of the merits of the issue. *Armstrong v. Dugger,* 833 F.2d 1430 (11th Cir.1987).

■ On the merits, we conclude that this case is controlled by *Hitchcock v. Dugger,* —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). There, the defense attorney had introduced some nonstatutory mitigating evidence, and although his stress in closing argument was on statutory mitigating circumstances, he also referred to several nonstatutory mitigating factors and invited the jury to consider "the whole ball of wax." By contrast, the prosecutor's closing argument told the jury to consider the mitigating circumstances by number, and then went down the statutory list one by one. In addition, the trial judge instructed the jury that " '[t]he mitigating circumstances you may consider shall be the following ...' (listing the statutory mitigating circumstances)." *Id.* 107 S.Ct. at 1824. Imposing the death sentence, the sentencing judge found that "there [were] insufficient mitigating circumstances *as enumerated in Florida Statute 921.141(6)* to outweigh the aggravating circumstances." *Id.* (emphasis in the Supreme Court text which quotes the trial record). On these facts, the Supreme Court concluded that it was clear that "the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances." *Id.* The Court concluded that there was a *Lockett* violation and granted the writ of habeas corpus.

In the instant case, it is even clearer than in *Hitchcock* that the jury was instructed not to consider, and that the judge did not consider, nonstatutory mitigating circumstances.

At the 1976 resentencing, the prosecutor's opening statement told the jury that the seven statutory mitigating circumstances were the only ones:

> In reaching that decision, His Honor will instruct you on the law and will instruct you on mitigating and aggravating circumstances. There are eight aggravating circumstances. There are seven mitigating circumstances—under the law. I suggest to you in this case there will be four—at least four aggravating circumstances. There will be no mitigating circumstances.

1976 Record at 127.

The following colloquy occurred in the presence of the jury as the defense was trying to introduce psychological evidence that Messer's heavy drinking and use of drugs would exacerbate his mental problems:

> [STATE]: Your Honor, if I may object—this is all very interesting, but it has no relevance to any mitigating circumstances.
>
> JUDGE: What is the relevance of this testimony to the mitigating circumstance?
>
> [MESSER'S COUNSEL]: Your Honor, I believe the witness has already testified to her findings, having indicated the weak emotional control of this defendant and his responsiveness to stressful situations and how personality and personal immaturity and his cerebral dysfunctioning is exacerbated by ...
>
> JUDGE: Which one are you fitting it under "A", "B", or "C"?
>
> [MESSER'S COUNSEL]: I would be relating specifically, Your Honor, to Section 921, sub-section "E" of the mitigating circumstances.
>
> JUDGE: Acting under extreme duress?
>
> [MESSER'S COUNSEL]: Pardon me, I was looking for "emotional distress." I think it relates to a number of these items, Your Honor, particularly "B".

The felony was under the influence of extreme mental or emotional distress.

*Id.* at 331–32. This colloquy indicates that the judge was laboring under the misunderstanding that only statutory mitigating circumstances were relevant. The colloquy is also evidence that the jury was led to believe the same thing.

Like the prosecutor in *Hitchcock*, the state attorney here discussed, one by one, the statutory list of mitigating circumstances, clearly implying to the jury that the statutory list was exclusive. The prosecutor here went further, however, and, after reviewing each factor on the statutory list, told the jury: "[a]nd that's all the court is going to instruct you on. There are no other mitigating circumstances." *Id.* at 409. Moreover, the prosecutor here conveyed to the jury that it should not consider the most significant nonstatutory mitigating evidence in the case—i.e., Messer's mental or emotional problems. The prosecutor argued that this evidence should not be considered because it did not rise to the statutory level of extreme mental or emotional disturbance:

> The next mitigating factor His Honor will instruct you on is that the crime for which the defendant is to be sentenced was while he was under the influence of extreme mental or emotional disturbance. No evidence. No evidence. The closest they came to it was the little lady from Gainesville who testified there was mild cerebral dysfunction. I specifically asked her, was there extreme mental or emotional disturbance. No, there was not. And you will recall Dr. Marshall told us he could not find any mild disorder of any nature. He also told us anyone who drinks excessively, they could possibly have some mild form of disorder—or if they had a bad nick on the head. But, no question—there is no evidence of any extreme mental or emotional disturbance. None. Still no mitigating circumstances.

*Id.* at 406–07.

The sentencing judge's formal charge to the jury was apparently identical to that in *Hitchcock*. Here the judge told the jury:

"The mitigating circumstances which you may consider, if established by the evidence, are these: . . ." [then listing the seven statutory mitigating circumstances]. *Id.* at 440–41.

Finally, the sentencing judge made the following relevant findings:

> The Court has reviewed those mitigating circumstances contained in Section 921.141(6)(a) through (g), and finds that none of those mitigating circumstances are present. In making this finding, the Court has considered the testimony of two clinical psychologists and a psychiatrist who testified, none of whom diagnosed the Defendant to have been suffering any extreme mental or emotional disturbance at the time of the commission of the offense.

> Based on the above findings, the Court concludes that sufficient aggravating circumstances exist to require the sentence of death in the electric chair, and that no mitigating circumstances exist which would allow this Court to reduce that sentence to life imprisonment.

*Id.* at 30–31. The first sentence quoted above is very similar to the finding by the sentencing judge in *Hitchcock*, and clearly indicates that the judge in this case only reviewed "those mitigating circumstances contained in Section 921.141(6)(a) through (g)." Moreover, the second sentence quoted above clearly indicates that the judge examined the psychological evidence only for the purpose of determining whether Messer's problems satisfied the statutory requirement of extreme mental or emotional disturbance.

As noted in the foregoing discussion, the instant case contains all the indications present in *Hitchcock* that the judge and jury considered only statutory mitigating factors. There are additional indications in this case, including the colloquy between the court and counsel in the presence of the jury suggesting that the psychological evidence was relevant only to the statutory mitigating circumstance of extreme mental or emotional disturbance, and including the more specific argument of counsel in this case that there "are no other mitigating

circumstances" and that the psychological evidence did not rise to the statutory level, and finally including the additional finding of the sentencing judge which indicated that he considered the psychological evidence only for the purpose of determining whether it rose to the statutory level. Thus, it is clear that Messer's jury was instructed not to consider, and his sentencing judge did not consider, evidence of nonstatutory mitigating evidence. We conclude that *Lockett* has been violated in both the jury phase and the sentencing phase by the judge.

In *Riley v. Wainwright*, 517 So.2d 656, the Florida Supreme Court has recently made it clear that the jury recommendation is an integral part of the Florida death sentencing scheme, and when a jury recommendation upon which the judge must rely is infected with a *Lockett* violation, "then the entire sentencing process necessarily is tainted by that procedure." *Id.* at 659. In order to cure the constitutional taint, any new sentencing procedure for Messer will have to include both the advisory jury phase and the sentencing judge phase of the Florida sentencing procedure. *See Magill v. Dugger*, 824 F.2d 879 (11th Cir.1987).[1]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Messer alleges that his counsel was ineffective at the guilt/innocence phase of his 1974 trial. This claim must be assessed in light of the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Claims of ineffective assistance must establish that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. First, a defendant must show that specific acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Id.*

at 690, 104 S.Ct. at 2066. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. Second, a defendant must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ Messer was represented at trial by Mr. James Ronald Shelley, a public defender for the First Judicial Circuit of Florida. The case was Mr. Shelley's second capital case in his career. Mr. Messer chiefly complains of the following statements made by Mr. Shelley at the end of the state's closing argument:

> SHELLEY: The defendant wishes to admit the degree of his guilt without argument or comment.
> JUDGE: You have no argument at all then?
> SHELLEY: We submit the issues to the jury of the degree of guilt without comment, Your Honor.

December 4, 1974 Transcript at 14.[2] Messer contends that the statements quoted above amount to an admission of guilt.

The colloquy above is ambiguous. Messer's attorney first seemed to say that he *admitted* the degree of guilt and wished to make no argument. When the judge sought to clarify what the attorney had said, the attorney stated that he *submitted* the degree of guilt to the jury without any comment. *Submitting*—not admitting—would indicate that there was not a concession of guilt, but that Shelley was submitting the issue of degree of guilt to the jury without commenting on it one way or the other. In reviewing the denial of Messer's post-conviction motion for relief, the Florida Supreme Court found that the attorney did not concede guilt. It concluded that:

> [C]ounsel's waiver of argument was a reasonable tactical decision under the circumstances.... By this tactic counsel was able to deprive the prosecuting attorney of the opportunity to present a

---

1. Because Messer will have to receive a new sentencing hearing, we will not address the other claims asserted by Messer which at best could only require the same relief.

2. The record of the 1974 trial proceeding was submitted by the state as Exhibit A.

rebuttal argument. Defense counsel could have reasonably decided (and did so, according to his testimony below) that it would be better for his client's case to submit the issue to the jury without argument than to allow the prosecutor the final opportunity to comment to the jury on what the evidence showed. Thus, defense counsel was not admitting that his client was "guilty as charged," as is argued by appellant.

*Messer v. State,* 439 So.2d at 877.

In the instant federal habeas corpus challenge to Messer's conviction, the Florida court's findings of fact made in the course of deciding Messer's ineffectiveness claim are binding on this court to the extent provided in 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *see also Tucker v. Kemp,* 776 F.2d 1487, 1490 n. 7 (11th Cir. 1985). According to that finding of fact, Messer's counsel did not admit guilt, but rather made a tactical decision not to argue.

Under the test set out in *Strickland v. Washington,* Messer's counsel was not ineffective by not offering closing argument. First, Messer's argument that his counsel conceded his guilt fails as a factual matter. There is evidence to support the Florida Supreme Court's finding of fact; the § 2254(d) presumption is not overborn. Second, as the Florida Supreme Court has found, the decision not to argue was a tactical move by the attorney. Thus, Shelley's action was not "outside the wide range of professionally competent assistance." *Id.,* 466 U.S. at 690, 104 S.Ct. at 2066. Third, the record contains no evidence that a failure to present closing argument in any way prejudiced Messer; there is overwhelming evidence of Messer's guilt.

■ Messer's second major basis for asserting that he did not receive effective assistance of counsel is that his attorney at trial did not follow through on the one plausible defense he believes was available —"what killed the victim?" There was evidence that Messer's codefendant may have struck the victim in the head with a tireir-

on. Messer had shot the victim in the head. Messer points out that the pathologist who performed the autopsy on the victim testified at trial that the blow to the head could have caused the victim's death: "In this case it is very difficult to say, I can only truthfully say that it could have. I cannot say in this case that it did." December 3, 1974 Transcript at 43. Messer points out that the pathologist, when first asked about the bullet wound, answered, "I feel that the bullet was the cause of death." *Id.* Messer asserts that his counsel should have deposed the pathologist and should have found an expert to present countervailing testimony "to magnify the doubt created by Dr. Birdwell's equivocal testimony." Brief of Appellee, Cross–Appellant at 40.

Messer fails to point out that shortly after the pathologist's allegedly equivocal statement, the following colloquy occurred:

Q. And, then it would be your testimony that the bullet was the cause of death in this particular case?

A. That is my opinion.

Q. Rather than the blow to the back of the head.

A. Rather than the blow to the back of the head, yes.

December 3, 1974 Transcript at 43–44. From the testimony above, it seems clear that any equivocation in the pathologist's testimony was resolved shortly afterwards. There is no reason to suppose that deposing the pathologist ahead of time would have aided Messer's case. The defense counsel testified in state court that he had had full access to the prosecutor's files, which presumably included the pathologist's report. Moreover, it cannot be assumed that Messer's attorney could have obtained an expert witness to refute the pathologist's testimony. *King v. Strickland,* 714 F.2d 1481, 1489 (11th Cir.1983), *vacated,* 467 U.S. 1211, 104 S.Ct. 2651, 81 L.Ed.2d 358 (1984), *opinion reinstated on remand,* 748 F.2d 1462 (11th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985). In addition, Shelley carefully cross-examined the pathologist regarding the potential deadly effect of the

blow from the tireiron. However, the pathologist stated that he had seen none of the physical trauma which accompanies fatal blows to the head or spinal cord. December 3, 1974 Transcript at 49–54. Shelley's conduct cannot be considered "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ Messer also asserts that his counsel at the 1974 trial was ineffective because he was tired. Even if Shelley was tired, this court has pointed out that a "tired lawyer is not necessarily an ineffective lawyer." *King v. Strickland,* 714 F.2d at 1489. Being tired, alone, "does not establish ineffectiveness." *Id.* "There must be some showing he committed errors because of his condition." *Id.*

■ Finally, Messer asserts that his counsel was ineffective because he did not file a motion for a continuance of the December 2, 1974 trial after he had been appointed to represent Messer on October 11, 1974. In connection with this, Messer asserts that his counsel was ineffective because he took no depositions. Other than possibly finding an expert to refute the pathologist's testimony, Messer does not allege any specific information that his attorney would have uncovered if he had asked for a continuance and had taken depositions. In addition, the attorney indicated in state court that he had full access to the prosecutor's files. *See Griffin v. Wainwright,* 760 F.2d 1505, 1512 (11th Cir. 1985) (where counsel had access to what he deemed sufficient information, his failure to attend depositions and question potential witnesses did not amount to ineffective assistance), *vacated on other grounds,* 476 U.S. 1112, 106 S.Ct. 1964, 90 L.Ed.2d 650 (1986).

We conclude that the district court correctly found that Messer was not deprived of effective assistance of counsel at his 1974 trial under the standard set out in *Strickland v. Washington.*[3]

## III. EXCLUSION OF JURORS

■ Messer claims that the state trial court improperly excluded two jurors at his 1974 trial in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). In addition, Messer contends that the exclusion of these jurors resulted in a "conviction-prone jury." *See Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985) (en banc), *rev'd sub nom. Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

The *Witherspoon* issue was rendered moot as a result of Messer's 1976 resentencing. *See Messer v. State,* 439 So.2d 875, 878 (Fla.1983). In *Witherspoon,* the Supreme Court stated that a *Witherspoon* error would not "render invalid the *conviction,* as opposed to the *sentence,* in this or any other case." 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original). Since Messer has already received another sentencing trial, we need not address the *Witherspoon* issue.

The Supreme Court has rejected the "conviction-prone jury" claim accepted in *Grigsby. Lockhart v. McCree,* 476 U.S. at 184, 106 S.Ct. at 1770; *see also McCleskey v. Kemp,* 753 F.2d 877, 901 (11th Cir.1985) (en banc).

## IV. CONCLUSION

The sentencing judge's refusal to consider nonstatutory mitigating circumstances constitutes a *Lockett* violation. In this regard, we affirm the district court. *Lockett* was also violated when the jury was instructed not to consider nonstatutory mitigating circumstances. In this regard we reverse the district court. The district court denied relief on the other claims, and we affirm in that regard. The case is remanded to the district court with instructions to enter an order granting the writ of habeas corpus, unless the state within a

---

**3.** In light of his 1976 resentencing, Messer's claim that his counsel at the 1974 sentencing was ineffective is moot. *Cf. King v. Strickland,* 748 F.2d 1462, 1464–65 (11th Cir.1984) (ineffective assistance of counsel at sentencing hearing warrants reversal of the sentence and a resentencing), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985).

reasonable time either resentences Messer in a proceeding that comports with *Lockett* or vacates the death sentence and imposes a lesser sentence consistent with law.

AFFIRMED in part, REVERSED in part, and REMANDED.